IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDRA YONKOV, | ) | CASE NO.  1:23 CV 1317 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| MAXIMUS HOLDING GROUP LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |

This matter comes before the Court upon the Motion of Defendant Maximus Holdings

Group LLC ("Maximus") to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a

Claim Upon which Relief may be Granted. (ECF #101) Maximus moves for an Order

dismissing Counts 3, 4, 8, 9, 11, 13, 14, 15, 17, 18, 20 and 21 of the Second Amended

Complaint ("SAC") as they relate to Maximus. The motion is fully briefed and ready for

decision.

**Factual and Procedural History**

Plaintiff filed a verified complaint seeking a temporary restraining order, preliminary

and permanent injunctions and a money judgment on July 6, 2023 . Her motion for a temporary

restraining order was denied on July 10, 2023. (ECF #9) Plaintiff has since filed First and

Second Amended Complaints. The SAC (ECF #84) purports to assert claims on behalf Plaintiff

Alexandra Yonkov both individually, and derivatively on behalf of Maximus, against

Defendants Maximus, Brickhaus Management, Inc. ("BMI"), Andrew Brickman, Julia Ivanova, Marcie Brickman, Brickhaus II, LLC and The Mansion at Woodland.[1] Plaintiff asserts the following claims in the SAC:

Count 1: Breach of employment contract against Defendants Brickman and BMI;

Count 2: Breach of contract relating to the Maximus operating agreement;

Count 3: Unjust enrichment against Defendants Brickman, Maximus and BMI;

Count 4: Breach of fiduciary duty against Defendants Brickman, Maximus and BMI;

Count 5: Conversion against Defendant Brickman;

Count 6: Common Law Fraud against Defendant Brickman;

Count 7: Securities Fraud against Defendant Brickman;

Count 8: Civil Conspiracy against Defendants Maximus, Brickman, BMI, Ivanova and Marcie Brickman;

Count 9: Misrepresentation/Promissory Estoppel against Defendants Brickman, Maximus and BMI;

Count 10: Libel/Defamation/Invasion of Privacy/False Light against Defendants Brickman and Ivanova;

Count 11: Accounting for Maximus and BMI;

Count 12: Judicial Dissolution of Maximus and BMI;

---

[1]

A number of Maximus subsidiary LLCs except The Mansion at Woodland have been dismissed from this action pursuant to their Motion to Dismiss (ECF #103)

Count 13: Piercing the Corporate Veil of Maximus and BMI;

Count 14: Derivative Action on behalf of Maximus;

Count 15: Indemnity under the Maximus Operating Agreement;

Count 16: Intentional Interference with Employment Relationship against Defendant Ivanova;

Count 17: Wrongful termination against Defendants Brickman, BMI and Maximus;

Count 18: Retaliation against Defendants Brickhaus, Maximus and Brickman;

Count 19: Civil Liability for Criminal Conduct against Defendant Brickman;

Count 20: Declaratory Judgment;

Count 21: Petition for Receivership of Maximus;

Count 22: Fraudulent Conveyance and/or Transfer involving conveyance of $700,000 from Defendant Marcie Brickman to Defendants Brickman and/or The Mansion at Woodland, LLC;

Count 23: Misappropriation by Fraud against Defendant Brickman involving transfer of property from Defendant Saint Helena Gateway Redevelopment Partners, LLC ("St. Helena");

Count 24: Replevin against Defendant Brickman;

Count 25: Corporate Successor Liability Against Defendant Brickhaus II, LLC as a mere continuation of BMI and/or Maximus.

### Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to

-3-

dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Twombly, 550 U.S. at 555; Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000). In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001).

### Analysis

Maximus moves to dismiss or be dismissed from Count 3 (unjust enrichment); Count 4 (Breach of Fiduciary Duty); Count 8 (Civil Conspiracy); Count 9

-4-

(Misrepresentation/Promissory Estoppel); Count 11 (Accounting); Count 13 (Piercing the Corporate Veil); Count 14 (Derivative Action on behalf of Maximus); Count 15 (Indemnity under the Maximus Operating Agreement); Count 17 (Wrongful termination); Count 18 (Retaliation); Count 20 (Declaratory Judgment); and Count 21 (Petition for Receivership of Maximus) of the SAC. Each count will be discussed in order.

## A. Unjust Enrichment (Count 3)

In Count 3 Plaintiff alleges that she conferred benefits on Defendants Brickman and BMI after the employment agreement was signed in 2019 by serving as Director of Operations and providing Defendants with a reputable manager to handle all logistics and facets of real estate operations. Defendants appreciated, accepted, and retained the benefits from Plaintiff but refused to pay Plaintiff for the benefits. Plaintiff incurred costs, including lost wages, profits and expenses when she provided these services to Defendants and it would be inequitable for Defendants to retain these benefits without payment of value. (ECF #84 SAC ¶¶ 421-427)

Under Ohio law, the elements of unjust enrichment are: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit in circumstances where it would be unjust to do so. *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 868 *citing* (S.D. Ohio 2020) *Baatz v. Columbia Gas Transmission, LLC*, 929 F.3d 767, 776 (6th Cir. 2019) *(quoting Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 834 N.E.2d 791, 799 (2005)). Here, Maximus asserts that the SAC fails to allege any benefit conferred on Maximus. Indeed, Maximus is not mentioned at all in Count 3 other than in the title. Plaintiff responds by asserting that "Defendants" referred to in Count 3 included Maximus. She points to averments made in paragraph 61 that Defendants (including

Maximus) did not offer Plaintiff paid maternity leave but she continued to work for Defendants' benefit from the maternity ward. However, as noted in paragraph 60, Plaintiff gave birth on December 8, 2013–long before Maximus was formed as an LLC on December 19, 2019 and more than ten years before she filed SAC. Accordingly, any work done from the maternity ward in 2013 did not confer a benefit on Maximus.

Next Plaintiff refers to paragraph 224 of the SAC where she avers [after describing various destructive acts of Defendant Brickman in previous paragraphs] that she had "been diligently working hard to expand Maximus's and the subsidiaries' bottom lines, was otherwise ignored, and her portion of the profits have yet to be distributed." Additionally, Plaintiff asserts that paragraph 422 of the SAC alleges the ways in which she conferred benefits on Defendant BMI: Plaintiff "conferred benefits on Defendants Brickman and Brickhaus (BMI) after the Employment Agreement was signed in 2019, by inter alia, serving as Director of Operations and providing Defendants with a reputable manager to handle all logistics and facets of the real estate operations." Plaintiff asserts that since Maximus owns 100% of BMI, and BMI is essentially the operating arm of Maximus, the benefit Plaintiff conferred on BMI benefitted Maximus. *See MJ Direct Consulting, L.L.C. v. Brooks & Stafford Co.*, 2016-Ohio-7718, ¶ 40 (8th Dist. Cuyahoga Cty Nov. 10, 2016) (Court found genuine issue of material fact existed as to whether a benefit conferred to a subsidiary was also received by the parent company). While Plaintiff's averments of benefits conferred on Maximus are tenuous, the elements of unjust enrichment have been sufficiently pled and the claim will not be dismissed against Maximus at this time.

**B. Breach of Fiduciary Duty (Count 4)**

In Count 4 Plaintiff asserts that Defendants Brickman, BMI and Maximus breached their fiduciary duties to Plaintiff. Specifically Plaintiff averred "as an officer, member, and/or employee of Maximus, Maximus and/or Brickman owed to Plaintiff fiduciary duties of loyalty, trust and care." SAC ¶429. The elements of a claim of breach of fiduciary duty in Ohio are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury resulting proximately from that breach. *Puhl v. U.S. Bank*, N.A., 34 N.E.3d 530, 536 (Ohio Ct. App. 2015).

Maximus asserts that it is clear at common law that "a limited liability company owes no fiduciary duty to its members, either directly or vicariously, for actions taken by its member." (ECF #101 p. 4) *citing Ligman v. Realty One Corp.*, Case No. 23051 (Ct.App. Summit Co.), 2006-Ohio-5061, ¶9. The Court has read the *Ligman* opinion but cannot find the quote set out by Maximus. Indeed, it appears that *Ligman* did not even concern an LLC. Maximus also referred to 51 Am.Jur.2d, Limited Liability Companies, §11 in support of its assertion that an LLC does not owe its members a fiduciary duty. 51 AmJur2d, Section 11 is titled "Duties and responsibilities of members and managers to limited liability company." According to 51 AmJur2d § 11 "[a] limited liability company (LLC), like a partnership, involves a fiduciary relationship which imposes on the members a duty to exercise the utmost good faith and honesty in all dealings and transactions related to the company." Section 11 does not discuss any fiduciary duties owed by an LLC itself to its members, nor could the Court find any cases imposing a fiduciary duty on an LLC to its members unless the LLC had assumed such a duty by contract or statute such as the LLC in *Failali v. E. Coast Performance LLC*, No.

-7-

5:22-CV-2038, 2023 WL 5671937, at *2 (N.D. Ohio Sept. 1, 2023). In *Failali*, the defendant

LLC was the sponsor of an ERISA benefit plan and a fiduciary for the Plan under the operation

of the ERISA statute. As such, it owed a fiduciary duty to Plaintiff as a Plan participant.

Plaintiff, citing *Rios v. Tower Hill Specialty Grp., LLC*, No. 1:20-CV-238, 2022 WL

980752 (S.D. Ohio Mar. 31, 2022), asserts that a limited liability company can absolutely be

held liable for breaching a fiduciary duty owed to its members. See ECF #152 at p.5. In *Rios*,

the Plaintiff was a minority member of an LLC called Specialty. He asserted a breach of

fiduciary duty claim against the other members of the Specialty LLC. The other member

defendants were LLCs. The court found that Plaintiff had sufficiently alleged facts to show that

the LLC defendants owed Plaintiff a fiduciary duty stating:

> Ohio law applicable at the time provided that members of a limited
> liability company owe to each other the fiduciary duties of loyalty
> and care—a point Defendants concede. R.C. 1705.281 (2016). (See
> Doc. 22, Pg. ID 362.) And Rios alleges that Defendants were
> fellow members and owed him such duties. (FAC, Doc. 19, ¶ 65.)
> THSG was the majority member and the manager of Specialty,
> owning 90% of Specialty. (FAC, Doc. 19, ¶¶ 41, 64.) THIG is
> allegedly the 100% owner of THSG, and an alter ego of THSG and
> Specialty's Board of Managers. (Id. at ¶ 49.) Rios was the minority
> member and owned 10% of Specialty. (Id. at ¶ 41.) They were all
> thus, allegedly, co-members of Specialty. Accordingly, Rios has
> adequately alleged that Defendants owed him fiduciary duties.

*Rios*, 2022 WL 980752, at *6. Thus, an LLC(named LLC1 for this example) may be a member

of another LLC (lets call the second LLC -LLC2). As a member of LLC2, LLC1 may owe

fiduciary duties to other members of LLC2, but there does not appear to any law supporting a

claim that LLC1 owes any fiduciary duty to its own members. As an LLC is an entity, like a

corporation, that can only act through its agents or managers, it makes sense that the entity

alone does not owe a duty to its members. Rather the fiduciary duty rests on the member or manager that acts for the LLC.

In Count 4 Plaintiff does not clearly allege that she and Maximus are members of another LLC, and that Maximus owes her a fiduciary duty as one member to another member of an LLC. Plaintiff merely avers that "as an officer, member, and/or employee of Maximus, Maximus and/or Brickman owed to Plaintiff fiduciary duties of loyalty, trust and care." (ECF #84 ¶429) Maximus is not an officer, member or employee of itself. Brickman, as an officer or employee of Maximus may owe a fiduciary duty to co-member Plaintiff. The only other defendant that Plaintiff includes in Count 4 is Brickhaus (BMI). According to the Maximus Operating Agreement, Maximus is the only owner of BMI. (ECF #84-8, Ex. A) As such, Plaintiff is not a member of BMI with Maximus and thus Maximus would not owe Plaintiff a fiduciary duty as a co-member of BMI. As such, Plaintiff has failed to aver facts to sufficient to show that Maximus owes Plaintiff a fiduciary duty. Accordingly, Maximus will be dismissed from Count 4.

**C. Civil Conspiracy (Count 8)**

In Count 8 Plaintiff alleges that Defendants Maximus, Brickman, Ivanova and Marcie Brickman, "directly or indirectly acting in concert, potentially with unknown third parties, maliciously combined to injure Plaintiff by breaching or assisting in the breach of the employment agreement and operating agreements, their fiduciary and/or statutory duties to Plaintiff and/or otherwise by engaging in tortious and/or otherwise unlawful conduct". (ECF #84, ¶ 459) She alleges that the Defendants actions were unlawful and that by virtue of the participation of the Defendants in the conspiracy, Plaintiff incurred damages including

-9-

unreimbursed compensation, loss of investment, lost opportunities, attorneys fees and more. (Id at ¶¶ 460-461)

The Supreme Court of Ohio defines civil conspiracy as " 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.' " *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863, 866 (1995) (quoting LeFort v. Century 21–Maitland Realty Co., 32 Ohio St.3d 121, 512 N.E.2d 640, 645 (1987)). In order to establish a claim of civil conspiracy plaintiff must allege the following elements: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy."*Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 629 N.E.2d 28, 33 (1993).

Maximus argues that Plaintiff has failed to state a claim against it for civil conspiracy because (1) Plaintiff has not pled facts to show that Maximus is a "person" capable of joining a civil conspiracy; (2) the acts that she alleged are "torts for which one person alone is not perfectly 'competent' to commit; and (3) breach of employment agreement or operating agreement are not unlawful acts separate from the conspiracy itself.

Maximus offers no legal support for its contention that it is not a person capable of joining a civil conspiracy. A civil conspiracy claim may be asserted against a limited liability company. See *Ohio Bureau of Workers' Compensation v. MDL Active Duration Fund, Ltd.*, 476 F.Supp.2d 809, 825-826 (S.D. Ohio 2007).

Maximus' assertion that the acts and torts alleged by Plaintiff can be achieved by one

-10-

person is irrelevant–an allegation that one person would not have been able to accomplish the acts done in furtherance of the conspiracy is not among the elements of the tort of civil conspiracy. *See NPF IV v. Transitional Health Servs.*, 992 F.Supp. 77, 83 (S.D. Ohio 1996).

Finally, Maximus argues that breach of an employment agreement or operation agreement is not an unlawful act. An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim. *Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App.3d 371, 380, 743 N.E.2d 984 (2000). In addition to the breach of employment and operating agreements, Plaintiff has alleged Defendants' engagement in torts–albeit very superficially and without reference to any specific torts other than breach of fiduciary duty. See SAC ¶ 459. At this early point in the litigation, this claim will not be dismissed against Maximus.

**D. Misrepresentation/Promissory Estoppel (Count 9)**

Plaintiff asserts a claim of Misrepresentation/Promissory Estoppel against Defendants Brickman, Maximus and Brickhaus (BMI). Plaintiff states that Maximus, BMI and Brickman have made inaccurate representations and/or "concealments" to Plaintiff that were material as to induce her to enter into relationships and transactions that caused substantial harm to Plaintiff, her reputation and her business, her equitable and/or legal interests in (or related to) Maximus, her standing with employees, customers, vendors and suppliers of Maximus who Plaintiff relies on. Further Maximas, Brickman and BMI were reckless or negligent as to the accuracy, context and/or truthfulness of the representations and Plaintiff justifiably relied on the representations or concealments and incurred damages as a result. SAC ¶¶ 463-467.

The elements of a promissory estoppel claim under Ohio law are: (1) a clear,

-11-

unambiguous promise: (2) reliance upon the promise by a person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of the reliance on the promise. *Stewart v. Everyware Glob., Inc.*, 68 F. Supp. 3d 759, 766 (S.D. Ohio 2014) citing *Weiper v. W.A. Hill & Associates*, 104 Ohio App.3d 250, 260, 661 N.E.2d 796 (1995).

Maximus argues that Plaintiff has pled no facts that support a claim that Maximus–the limited liability company–made any "inaccurate representations and/or concealments" whatsoever. Plaintiff did not allege that Maximus, the company issued statements or delivered communications to her, apart from what Brickman may have said. Maximus argues that the allegations of false statements or misrepresentations made by Brickman in the factual allegations in the SAC are relatively few and may not have been made in the course of Mr. Brickman's position with Maximus. Weighing and fleshing out the factual surroundings of Mr. Brickman's alleged statements cannot be accomplished on a motion to dismiss. Plaintiff has sufficiently pled a claim of promissory estoppel.

### E. Accounting for Maximus and BMI (Count 11)

In Count 11, titled Accounting for Maximus and Brickhaus(BMI), Plaintiff avers that Brickman, BMI and Maximus are obligated to keep the members, investors, officers and various agents of Maximus informed about the financial affairs of Maximus and BMI and provide the material facts necessary for Plaintiff and others similarly situated to protect their interests. Plaintiff avers that to date Brickman, BMI and Maximus have failed and refused to provide an accounting for Maximus and that she believes that Brickman, BMI and/or Maximus are not prudently managing Maximus' assets, and are depleting Maximus' assets through waste,

mismanagement and self-dealing. Maximus and BMI have not complied with their tracking and reporting obligations and to date have not provided financial statements certified as true and accurate by an authorized officer of Maximus and/or BMI. The harm to Plaintiff is not known because BMI, Maximus and Brickman have failed or refused to provide an accounting. SAC ¶¶ 478-486.

An action for an accounting is an equitable action. Under Ohio law, "where there is an adequate remedy at law, an equitable remedy is improper."*Skurka Aerospace, Inc. v. Eaton Aerospace, L.L.C.*, No. 1:08 CV 1565, 2011 WL 1134591, at *3 (N.D. Ohio Mar. 25, 2011) citing *McNulty v. PLS Acquisition Corp.*, Nos. 79025, 79125, 79195, 2002 WL 31875200, ¶ 80 (Ohio App. 8 Dist. Dec.26, 2002). See also *Boland v. First Winthrop Corp.*, 2010 U.S. Dist. LEXIS 77609, *7–8, 2010 WL 3037076 (S.D.Ohio Aug. 2, 2010) ("Equitable accounting actions are rare since the advent of the Federal Rules of Civil Procedure because the liberal standards of the Rules generally afford plaintiffs the opportunity to obtain discovery relevant to their asserted claim."); *Phillippi v. Jim Phillippi, Inc.*, 2009 U.S. Dist. LEXIS 66169, *6, 2009 WL 1911763 (S.D. Ohio June 26, 2009) ("Under the Federal Rules of Civil Procedure, in connection with his breach of fiduciary duty claim, Phillippi has a liberal discovery right to determine the extent to which Defendants allegedly commingled and misused corporate funds....But if Phillippi is dissatisfied with Defendants' discovery responses, his appropriate remedy is a motion to compel discovery-not an accounting claim."); *Bradshaw*, 454 F.2d at 79 ("[An accounting] is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate .... the liberal discovery procedures of the Federal Rules operate to make the legal remedies more 'adequate' than before."); *Digital 2000, Inc. v.*

-13-

*Bear Commc'ns., Inc.*, 130 F. App'x 12, 23 (6th Cir.2005) ("In light of the broad discovery available to litigants, accounting actions are of dubious utility.") (relying on Michigan state law); *Fid. Nat'l Title Ins. Co. v. Title First Agency, Inc.*, 2008 U.S. Dist. LEXIS 72598, *35, 2008 WL 4371838 (E.D.Mich. Sept. 22, 2008) ("Title First's case is not one of those rare cases, since its damages are readily ascertainable through discovery.")

A cause of action for accounting seeks "a determination by a court of what may be due the respective parties as a result of the relationship between them." *Moore v. Sweda*, 27 Ohio App.3d 38, 499 N.E.2d 371, 373 (Ohio Ct. App. 1985). *See also Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972) ("An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another."). The required elements were "fraud, [a] fiduciary or trust relationship, and necessity." *Sabre Energy Corp. v. Gulfport Energy Corp.*, No. 2:19-CV-5559, 2021 WL 2779157, at *4 (S.D. Ohio July 2, 2021) citing *Miller Med. Sales, Inc. v. Worstell*, No. 91AP-610, 1992 WL 31988, at *6 (Ohio Ct. App. Feb. 18, 1992) (*citing Bonnell v. B. & T. Metals Co.*, 81 N.E.2d 730, 732 (Ohio Ct. App. 1948)).  Furthermore, a claim for an accounting "must set forth operative facts which, when construed in the claimant's favor, establish a right to the requested relief." *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06-CV-00126, 2007 WL 1144866, at *4 (S.D. Ohio Apr. 16, 2007) citing *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 742 N.E.2d 674, 683 (Ohio Ct.App.2000).

Plaintiff avers that she sought financial information from Maximus through Brickman. To the extent that such information is required to be disclosed in the Maximus operating agreement, any disclosure failure could be addressed in the breach of contract claim asserted by

-14-

Plaintiff. As such, Plaintiff has remedies at law that would be preferred over an equitable remedy such as accounting. Plaintiff has asserted breach of fiduciary duty and fraud claims against Defendant Brickman in other counts, and the lengthy complaint certainly shows the complexity of the operations included under the Maximus umbrella and the difficulty in determining if the assets have been prudently managed. The SAC, taken as a whole, alleges "fraud, [a] fiduciary or trust relationship, and necessity," sufficient, at this point, to state a claim for accounting. See *Sabre Energy Corp*, *supra* 2021 WL 2779157, at *4.

**F. Piercing the Corporate Veil (Count 13)**

In Count 13 Plaintiff avers that the organizers of Maximus and BMI have failed to honor the requirements of Ohio law, by failing to adequately fund and manage Maximus and BMI to the detriment of its creditors and other stakeholders and asks that Defendant Brickman remain personally liable for liable for these acts and/or omissions of Maximus.(SAC ¶¶ 490-492) Maximus moves to dismiss this claim because "piercing the corporate veil" it is not a cause of action, merely a legal rule or doctrine that permits courts to disregard the formal corporate structure so that individual shareholders may be held liable for the actions of the corporation. (ECF #167 at p. 11)

Regardless of whether piercing the corporate veil is a legal doctrine or a cause of action, the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust

-15-

loss resulted to the plaintiff from such control and wrong. *Belvedere Condo Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 289(1993) holding modified by *Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506 (2008). In *Dombroski*, the Ohio Supreme Court modified the second element–"to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct. The first and third prongs of the Belvedere test are not affected by this ruling and must still be met for a piercing claim to succeed." *Dombroski*, 119 Ohio St. 3d at513.

Whether a cause of action or a form of relief sought, Plaintiff has put Defendants Brickman, Maximus and BMI on notice that she will seek to pierce the corporate veil in order to hold Mr. Brickman personally liable. As such, Count 13 will not be dismissed.

## G. Derivative Action (Count 14)

In Count 14, Plaintiff purports to assert a derivative claim on behalf of Maximus. Under Ohio Rule 23.1, a complaining shareholder must (1) spell out the efforts made to have the directors or other shareholders take the action demanded; (2) explain why he failed in this effort or did not make it; and (3) show that he fairly and adequately represents the interests of other similarly situated shareholders. *Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 670 (S.D. Ohio 2003) *Weston v. Weston Paper and Manufacturing Co.*, 74 Ohio St.3d 377, 379(1996). Where a plaintiff does not comply with the requirements of Rule 23.1, the plaintiff has no standing to bring suit. *Grand Council of Ohio v. Owens*, 86 Ohio App.3d 215, 220, 620 N.E.2d

-16-

234 (1993).

Here Plaintiff has alleged that she was a shareholder or member of Maximus at the time of the actions complained of and that she sent letters and or email in January and May of 2023 to Maximus, addressed to Brickman, requesting that Brickman cease violating the terms of the Maximus operating agreement, cease improper company spending and from hiring outside consultants without consultation with Plaintiff and alleged the damages to Maximus expected from the challenged conduct. (See SAC ¶¶ 48, 102, 115, 140, 150, 152, 157, 160, 162, 225) She also avers that she can fairly represent the interests of Maximus and its stakeholders.

Maximus takes issue with the letters or email notice that purportedly serve as her demand on the company to take suitable action as is required by Ohio Rev. Code § 1706.612.[2] The January 11, 2023 letter serves formal notice that BMI is in breach of her employment agreement with BMI and the Operating Agreement of Maximus. The letter details specific breaches relating to various projects and the monetary damages she is or will be caused as a result of the breaches and requests corrective action within 15 days or she will resign her position for Good Reason as defined in her Employment Agreement. (See ECF #84, Ex. 4)

The emails attached as Exhibit 29 of the SAC from Plaintiff to Brickman with the subject line Brickhaus Budget and new hires- stating that she does not agree to people being

---

[2]

A member may not commence a derivative action in the right of the limited liability company, or a series thereof, until both of the following occur: (A) A written demand has been made upon the limited liability company or the series to take suitable action. (B) Ninety days have expired from the date the demand was made unless either of the following applies:(1) The member has earlier been notified that the demand has been rejected by the limited liability company or the series; (2) Irreparable injury to the limited liability company or the series would result by waiting for the expiration of the ninety-day period.  Ohio Rev. Code Ann. § 1706.612 (West)

hired and given decision making authority without her approval; does not agree with the increase to the company overhead and budget; and she does not agree to not being paid payroll. Maximus is not mentioned in the email and it is hard to accept that the email constitutes a written demand on Maximus. The January 11, 2023 letter points out a number of actions that purportedly violated the Maximus Operating Agreement relating to various projects, but all of Plaintiff's complaints center around payments that she is owed under the Operating Agreement. She clearly is not seeking relief for Maximus in the January 11 letter. As such, the letter does not meet the notice requirements of Ohio Rule 23.1 or Ohio Rev. Code § 1706.612. Accordingly, Plaintiff's derivative claim against Maximus is dismissed.

**H. Indemnity** (Count 15)

Plaintiff asserts that she is entitled to indemnification under Section 5.5(f) of the Maximus Operating Agreement which provides that Maximus "shall indemnify, hold harmless, defend, pay and reimburse [Plaintiff] against any and all losses, claims, damages, judgments, fines or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims... by reason of ... any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member or any direct or indirect subsidiary of the foregoing in connection with the business of the Company." (ECF #84, SAC ¶511) Plaintiff alleges that she has incurred one or more of the categories of "losses, claims, damages, judgments, fines or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines or liabilities, and any amounts expended in settlement of any claims." Id. ¶512 Further, Plaintiff avers that Maximus has not reimbursed Plaintiff in violation of the Operating

-18-

Agreement.

Maximus argues that the Indemnification provision protects Plaintiff if she acts in good faith at the request of the Company. It does not compel Maximus to pay her expenses to sue it or provide assurance that her investment as a member might not be diminished. Plaintiff counters that her cause of action for indemnity has arisen because Defendant BMI has sued Plaintiff (by way of a counterclaim asserted in response to the November 10 Complaint) for actions she took on behalf of BMI and because BMI is a direct subsidiary of the Company [i.e., Maximus]. Maximus responds that even if her claim that she sought indemnification a month before she was sued is credited, the indemnification provision specifically excludes indemnification for conduct that was not undertaken "in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company." The Counterclaim alleges the Plaintiff breached her employment agreement, has been unjustly enriched, breached her fiduciary duties to BMI and converted money from BMI and/or Maximus. (ECF #99) Defenses to these claims are outside to contractual indemnification of Section 5.5 of the Maximus Operating Agreement. As such, Count 15 will be dismissed.

**I. Wrongful Termination (Count 17)**

Plaintiff alleges wrongful termination against Defendants Brickman, BMI and Maximus in Count 17. She avers that she is a minority member of Maximus and that BMI is a wholly owned subsidiary of Maximus and that Plaintiff served as Director of Operations at BMI. Plaintiff states that BMI allegedly terminated her for cause but as a minority member employee of a closely held company, under Ohio law, she could only be terminated for a legitimate business reason. BMI failed to terminate Plaintiff for any legitimate business reason.

-19-

Maximus argues that Plaintiff has pled no facts demonstrating that Maximus participated in any way in her termination or that Maximus had any fiduciary duty to her. All of her factual allegations regarding her termination center around BMI and Brickman. She had an employment agreement with BMI, "Brickman callously fired Plaintiff, the Director of Operations at BMI." (ECF #84, Ex. 4, SAC ¶ 37) Plaintiff counters that she has alleged that all of the Defendants (including Maximus) conspired and assisted in Plaintiff's wrongful termination." (SAC ¶ 535) It is too early in this litigation to flesh out this claim.

**J. Declaratory Judgment (Count 20)**

Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a) which provides in pertinent part:

> Any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Maximus argues that a declaratory judgment is a remedy, not a complaint. Further, the count does not allege any wrongdoing by Maximus. Plaintiff counters that "[d]eclaratory judgments are a cause of action authorized under R.C. Chapter 2721." *Am. Business Invests, LLC v. Shaeena & Allos, LLC*, 2023-Ohio-739, ¶ 33, 210 N.E.3d 651, 658 (6th Dist. Ct App. Mar. 10, 2023). In *American Business Investments*, the Court determined that

> any analysis of ABI's estoppel claim, under either a theory of equitable or promissory estoppel, would not be properly before the court in a declaratory judgment action. Declaratory judgments are a cause of action authorized under R.C. Chapter 2721. R.C. 2721.03 states, in relevant part, that "any person interested under a deed, will, written contract, or other writing constituting a contract" may

-20-

> file a declaratory judgment action to have their rights under the
> instrument determined. "An action for declaratory judgment is a
> remedy in addition to other legal and equitable remedies and may
> be granted 'where the court finds that speedy relief is necessary to
> the preservation of rights which might otherwise be impaired.' "
> (Emphasis added.) *State ex rel. Northwood v. Court of Common
> Pleas of Wood County*, 109 Ohio App.3d 487, 490, 672 N.E.2d 695
> (6th Dist.1996), *quoting State ex rel. Taft v. Court of Common
> Pleas of Franklin County*, 63 Ohio St.3d 190, 586 N.E.2d 114
> (1992). Since declaratory judgment is a remedy, we find that ABI's
> attempt to seek declaratory judgment on another remedy—its
> estoppel claim—is unfounded.

*Am. Bus. Invs.*, LLC, 2023-Ohio-739, ¶ 33, 210 N.E.3d 651, 658. Here, Plaintiff is seeking a declaration of her rights under her employment agreement and the Maximus Operating Agreement which is permitted under the declaratory judgment provisions. At this time, Maximus' motion to dismiss it from this Count is denied.

**K. Petition for Receivership (Count 21)**

In Count 21 Plaintiff petitions the Court to appoint a receiver to administer the affairs of Maximus during the pendency of this action pursuant to Fed. R. Civ. P. 66, 28 U.S.C. § 3103 et seq., 28 U.S.C. § 1692, and R.C. 2735.01 and 1707.27. Maximus argues that the demand that a receiver be appointed is not a complaint but a remedy and the Count does not allege any wrongdoing by Maximus. Finally, Maximus concedes that "Plaintiff is free to argue that the appointment of a receiver is an appropriate remedy after she establishes wrongdoing. Maximus will oppose that remedy on the merits if she does so. But whatever the outcome, the appointment of a receiver is not a count of a complaint." (ECF #167 at p. 15) So noted, the Petition for Receivership remains.

**CONCLUSION**

For the reasons set forth above, the Motion of the Defendant Maximus to Dismiss Maximus from Count 4 (Breach of Fiduciary Duty) is granted. Further, the Motion to Dismiss Counts 14 (Derivative Action) and Count 15 (Indemnity) is granted and those claims are dismissed. The Motion to Dismiss Counts 1, 2, 3, 8, 9, 11, 13 15, 17, 18, 20, and 21 is denied.


IT IS SO ORDERED.


DONALD C. NUGENT
United States District Judge

DATED: _May 21, 2024_

-22-